IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MELVIN E. MORRIS,                    )
                                     )
                 Plaintiff,          )
                                     )
         v.                          )    1:07CV780
                                     )
HENNON & BROWN PROPERTIES, LLC,      )
                                     )
                 Defendant.          )
```

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

This case comes before the Court on Plaintiff's motion for partial summary judgment on the pleadings pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Specifically, Plaintiff seeks judgment as to the four counts of Defendant's answer and counterclaim. These claims arise from Plaintiff's role as one of the managers of three separate North Carolina limited liability companies, each of which was formed to fund and manage a separate construction project. The three LLCs were known as Bostic Development at Phillip Boulevard, LLC ("Phillip Boulevard"), Bostic Development at EIU, LLC ("EIU"), and Bostic Development at WKU, LLC ("WKU"). Defendant provided an initial capital contribution of three million dollars to Phillip Boulevard and one million dollars to each of the latter two projects. This eventually represented a 59%, 29%, and 29% ownership share.

---

[1] The Court held oral argument on May 27, 2008 and some of the facts come from that hearing.

Plaintiff served as co-manager of all three projects, sharing this duty with Jeffrey L. Bostic and R. Winkins Hamill for the Phillip Boulevard project and with Bostic and Michael S. Hartnett for both EIC and WKU.[2] (Docket No. 10, Ex. A, p. C-1; Ex. B, p. C-1; and Ex. C, p. C-1.) Defendant claims that Plaintiff, as a manager of the LLCs, owed Defendant, as a member of each LLC, a fiduciary duty as a matter of law. It bases its three constructive fraud claims, one for each of the three LLCs, on allegations that Plaintiff improperly profited from this fiduciary relationship at Defendant's expense. Specifically, Defendant alleges that Plaintiff improperly engaged in self dealing and commingled funds of the three LLCs with those of other business entities for his personal gain. (Docket No. 10, ¶¶ 47-48, 52-53, 58-59.) These alleged actions violate Article 5.1.2 of each of the companies' operating agreements, which provide that "Company funds shall not be commingled with funds from other sources and shall be used solely for the business of the Company." (See Docket No. 10, Ex. A-C.) The counterclaim also alleges Morris transferred LLC funds to other persons or entities, including some in which Morris had a personal interest, and misappropriated funds and used them on his own projects, including building and improving his and his family members' residences. In the fourth count of the counterclaim, Defendant asserts that Plaintiff's alleged breach of fiduciary duty

---

[2] The operating agreements also suggest that Plaintiff was a member as well as a manager of each company, either individually or as a representative of The Moose Development, LLC. However, this issue is never specifically addressed or clarified by the parties.

while operating an LLC in North Carolina violates the state's unfair and deceptive trade practices act ("UDTPA"). (Docket No. 10, ¶ 63-67.)

Defendant's allegations of constructive fraud primarily rely on the North Carolina Limited Liability Company Act, N.C.G.S. § 57C-1-01, <u>et</u> <u>seq.</u>, which dictates that the manager of an LLC

> shall discharge his duties as manager in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company.

N.C.G.S. § 57C-3-22(b). The Act also provides that,

> [e]xcept as otherwise provided in . . . a written operating agreement, every manager must account to the limited liability company and hold as trustee for it any profit or benefit derived without the informed consent of the members by the manager from any transaction connected with the formation, conduct, or liquidation of the limited liability company or from any personal use by the manager of its property.

N.C.G.S. § 57C-3-22(e).

Pursuant to N.C.G.S. § 57C-3-31, an LLC may eliminate the personal liability of a manager, director, or executive for breach of any of the duties listed in section 57C-3-22 except for:

> (i) acts or omissions that the manager, director, or executive knew at the time of the acts or omissions were clearly in conflict with the interests of the limited liability company, (ii) any transaction from which the manager, director, or executive derived an improper personal benefit . . . <u>except</u> <u>that</u> <u>indemnification</u> . . . <u>may</u> <u>be</u> <u>provided</u> <u>if</u> <u>approved</u> <u>by</u> <u>all</u> <u>the</u> <u>members</u>.

N.C.G.S. § 57C-3-32(b)(emphasis added).

The operating agreements for each of the three companies reiterate these tenets by holding both members and managers liable

for: "(i) acts or omissions which such Member or Manager knew, at the time of the acts or omissions, were clearly in conflict with the interest of the Company, or (ii) any transaction from which such Member or Manager derived an improper personal benefit." (Docket No. 10, Ex. A, Article 6.1; Ex. B, Article 6.1; and Ex. C, Article 6.1.) Under the terms of the Phillip Boulevard agreement, managers also may be held personally liable "for breaches of contractual obligations or agreements between the Manager and the Company."[3] (Docket No. 10, Ex. A, Article 5.14.)

The counterclaim does not make clear how Plaintiff could have accomplished the alleged misdeeds, because he was only one of three managers, and the other managers are not listed in the counterclaim. The operating agreements provide that, while one or more managers have the power and authority to manage the business and affairs of each company, these powers are not without limit. Most significantly, actions by the managers must generally be approved by "the affirmative vote of more than 50% of the Managers represented and voting at a duly constituted meeting, or pursuant to a written consent." Thus, it is clear that Plaintiff, as one of three co-managers, was required to consult his fellow managers, at least to some extent, before acting in his managerial capacity. Even Michael Hartnett, who held the enhanced position of "operating

---

[3]The operating agreements for EIU and WKU do not contain similar provisions.

manager" for EIU and WKU,[4] and therefore had the authority to manage those projects in the ordinary course of business, was not free to disregard the "control and direction" of the managerial board, and served at their pleasure. In the present case, however, Defendant's allegations lie against Plaintiff alone, without any indication that he actually caused or approved the actions, as opposed to the other managers being wholly or partially responsible.

### Discussion

Plaintiff has filed a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. In deciding such a motion, the Court should apply the same standard as when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-406 (4th Cir. 2002). The standard for such review was recently set out in Giarratano v. Johnson, 521 F.3d 298, 302 & 304 (4th Cir. 2008), where the court stated:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir.2000); see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl.

---

[4] No operating manager was designated for Phillip Boulevard, and it is not alleged that Plaintiff served in this capacity for any of the three companies.

-5-

> Corp. v. Twombly, ____ U.S. ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).
>
> . . .
>
> The conclusion that dismissal is appropriate comports with Twombly, ____ U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), [when the pleadings do not disclose] "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. In Twombly, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge [ ] their claims across the line from conceivable to plausible." Id. at 1974.

As will be seen, Defendant simply does not state sufficient facts on which the Court may conclude that Defendant has standing to bring a direct action against one of the managers of the LLCs and, for this reason, the four counterclaims should be dismissed.

Plaintiff Morris makes a very limited attack on Defendant's counterclaim. He restricts his motion to dismiss on the broad grounds that the counterclaim does not allege a fiduciary relationship between Morris (the manager) and Defendant (a member of the LLCs), because no allegations of special confidence or trust are set out. Morris would like this Court to answer the broad question of "whether a co-manager of an LLC in North Carolina, nothing else appearing, stands in a fiduciary relationship to the members of the LLC." (Docket No. 18, Br. in Support of Mot. to Dismiss at 4-5).[5] With respect to the unfair and deceptive trade

---

[5] Plaintiff Morris also makes a half-hearted argument that the pleadings do not satisfy Fed. R. Civ. P. 9(b) because they are made on information and belief, and fail to state the facts upon which such information and belief is premised.

-6-

practice act claim, Morris claims it is defective because it is premised on a nonexistent breach of fiduciary duty. Further, he argues that even though all the LLCs were North Carolina companies and operated in this State, because the projects were located outside of this State, there could have been no effect on North Carolina trade or commerce.

For its part, Defendant Hennon & Brown also apparently wants this Court to answer the broad question of whether N.C.G.S. § 57C-3-22(b) operates generally to create a fiduciary duty between managers and members of North Carolina LLCs. Both parties concede there is no extant North Carolina authority with respect to that issue.

The Court is unable to accommodate the parties' request that it attempt to resolve a heretofore unanswered question involving North Carolina law. First, a federal court should approach such "new" issues cautiously and avoid them, if possible. See, e.g., Time Warner Entertainment-Advance/Newhouse Partnership v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007); Chawla v. Transamerica Occidental Life Ins. Co., 440 F.3d 639, 648 (4th Cir. 2006). Second, and more importantly, federal courts are courts of limited jurisdiction and have a special obligation to satisfy themselves of their jurisdiction with respect to any case or controversy before them. Stephens v. County of Albemarle, Va., 524 F.3d 485, 490 (4th Cir. 2008). The constitutional requirements of Article III require that the Defendant have standing to pursue the counterclaim, meaning: (1) it suffered an actual or imminent

injury in fact which is both concrete and particularized; (2) that such injury is traceable to the conduct of the party sought to be held liable; and (3) that the injury will be redressed by a favorable decision. Id. at 492. Likewise, under North Carolina law, "[s]tanding is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." Aubin v. Susi, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002).

Before addressing the standing issue, it will provide helpful perspective to first discuss fiduciary duty under North Carolina law. The opinion in S.N.R. Management Corp. v. Danube Partners 141 LLC, ___ N.C. App. ___, 659 S.E.2d 442 (2008), contains a concise citation of North Carolina law with respect to fiduciary relationships. There, the court stated:

> "[I]t is fundamental that a fiduciary relationship must exist between the parties in order for a breach of fiduciary duty to occur." Branch v. High Rock Realty, Inc., 151 N.C.App. 244, 251, 565 S.E.2d 248, 253 (2002) (citation omitted). A fiduciary relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Stone v. McClam, 42 N.C.App. 393, 401, 257 S.E.2d 78, 83 (1979) (quotation omitted).
>
>> Generally, in North Carolina ... there are two types of fiduciary relationships: (1) those that arise from "legal relations such as attorney and client, broker and client ... partners, principal and agent, trustee and cestui que trust," and (2) those that exist "as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other."
>
> Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F.Supp.2d 540, 546 (M.D.N.C.1999) (citations and quotations omitted). "Only when one party figuratively holds all the

-8-

> cards-all the financial power or technical information, for example-have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." <u>Broussard v. Meineke Discount Muffler Shops, Inc.</u>, 155 F.3d 331, 348 (4th Cir.1998) (internal quotation marks and citations omitted).

<u>Id.</u> 659 S.E.2d at 451. In that case, the court found that a developer did not stand in a fiduciary relationship with perspective purchasers of property because he did not have any amount of control or dominion outside of that normally existing in the relationship.

With respect to traditional corporations, as a general rule, the manager of a corporation does not stand in a fiduciary duty with respect to the corporation. <u>Dalton v. Camp</u>, 353 N.C. 647, 548 S.E.2d 704 (2001). However, a fiduciary duty may arise when a manager, by virtue of his position, acts in a manner directly contrary to explicit duties imposed upon him. <u>Onslow Wholesale Plumbing and Elec. Supply, Inc. v. Fisher</u>, 60 N.C. App. 55, 298 S.E.2d 718 (1982).

In contrast to the law applying to traditional corporations, North Carolina, by statutory law, imposes certain duties on managers of an LLC. As stated in Russell M. Robinson, II, <u>Robinson on North Carolina Law</u> § 34.04[3] at pp. 34-23—34-24.1 (7th ed. 2007):

> The Act charges the managers of an LLC with duties of good faith, due care and loyalty similar to those of directors of a corporation and adds a separate duty, derived from the Partnership Act, to account to the LLC as a trustee for profits and benefits derived from transactions connected with the formation, conduct or liquidation of the LLC and for personal use of LLC property. The duties of good faith, due care and loyalty

-9-

> may not be eliminated or restricted by agreement of the members, but the articles of organization or a written operating agreement may eliminate or modify a manager's duty to account as a trustee.
>
> . . .
>
> By requiring a manager to account to the LLC and hold any profit or benefit as a trustee, the provision plainly imposes a significantly higher fiduciary standard on LLC managers than the corporate duty of loyalty.

In the instant case, Defendant clearly alleges that Plaintiff Morris, among other things, improperly obtained and withheld profits in violation of N.C.G.S. § 57C-3-22(e). At oral argument, even Plaintiff agreed that the duties of a trustee imposed by N.C.G.S. § 57C-3-22(e) were likely fiduciary duties. Nevertheless, it is not necessary to explore the depths of what might constitute fiduciary duties under the North Carolina Limited Liability Company Act. Rather, assuming the counterclaim alleges acts in violation of N.C.G.S. § 57C-3-22(e) that likely constitute a breach of a fiduciary duty, the more important question in this case is to whom is that duty owed – to the LLCs or to the member individually. This is the heart of the standing question.

The answer to the question of standing in this case becomes clear when examining the similar situation with respect to close family corporations whereby a shareholder seeks to sue a manager or member of the board of directors. Generally speaking, a derivative action is the appropriate vehicle when a shareholder or, in our case a member of the LLCs, seeks to recover on behalf of the corporation or LLC. An individual or direct action is the appropriate vehicle when a shareholder or a member of an LLC seeks

-10-

to enforce rights which belong to him or her personally.  Aubin, 149 N.C. App. at 324-325, 560 S.E.2d at 879.  Shareholders have no right to bring actions in their own names to enforce rights which belong to the corporation.  Id.  The one exception to this rule occurs when the wrongdoers are shareholders and directors and so control the closely held corporation that any recovery by it would not protect the minority members.  In that event, the North Carolina courts have allowed shareholders to bring a direct action even though a derivative action would normally be the appropriate vehicle.  This may occur, for example, where the wrongdoing directors have converted, appropriated, or wasted corporate assets.  Id.  But, if the plaintiff shareholder in a closely held corporation owns a 50% interest in the stock, then such shareholder would not be allowed to bring an individual action and can only bring a derivative action.  Id.[6]

The problem in this case is that Defendant has filed an individual, as opposed to a derivative, action when Defendant's allegations do not show that Defendant was specifically and particularly harmed by any of Morris' actions arising from a breach

---

[6] In the instant case, Defendant is not even a minority member in one LLC, and in the other two LLCs, it is not clear that he is a minority member.  In addition, Defendant does not assert that Plaintiff Morris owns a controlling interest in the other two LLCs.  In other words, the counterclaim does not allege facts showing that Defendant's position in the LLCs resembles that of a minority shareholder in a closely held corporation who could bring a direct action instead of, or in addition to, a derivative action.  Thus, Defendant has not alleged facts showing that it should be allowed to recover on behalf of the corporation by filing an individual action and, for this reason, the counterclaim may be dismissed.

-11-

of a duty running solely to Defendant.  Instead, all of the alleged breaches and harm would appear to have affected all members of the LLCs and not just Defendant.

The prerequisites for bringing an individual action were set out in <u>Energy Investors Fund, L.P. v. Metric Constructors, Inc.</u>, 133 N.C. App. 522, 516 S.E.2d 399 (1999)(even though the case involved a limited partnership, the court held that the law of corporations would apply to the situation).  In <u>Energy Investors</u>, the court found that to proceed with an individual action, the limited partner (or shareholder) had to allege a special duty owed to it, separate and distinct from any duty owing to the corporation.  In addition, the party must allege an individual loss, separate and distinct from any damage suffered by the corporation.  <u>Id.</u> at 133 N.C. App. 524-525, 516 S.E.2d at 401; <u>see also</u> <u>Norman v. Nash Johnson & Sons' Farms, Inc.</u>, 140 N.C. App. 390, 537 S.E.2d 248 (2000).  (Minority shareholders suffered harm distinct from other shareholders, and special duty owed to said shareholders of a different kind and degree from other shareholders.)

In the instant case, Defendant fails to make any allegations of a special duty owed only to it and not the other members of the LLCs, nor has it shown that it suffered a special loss, separate and distinct from the harm to the LLCs and other members of the LLCs.  Consequently, Defendant has no standing to bring a direct or

-12-

individual action[7] against a member-manager of the LLCs.  For this reason, Defendant's claims alleging breach of fiduciary duty should be dismissed.  With respect to the unfair and deceptive trade practice claim, this is based on the constructive fraud counts.  Therefore, for the same reason, Defendant has no right to bring a direct cause of action against one of the member-managers.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion for Partial Judgment on the Pleadings (docket no. 22) be granted and that Defendant's Counterclaim be dismissed.

_____
**United States Magistrate Judge**

July 3, 2008

---

[7] Others, in bringing similar claims involving an LLC, have done so pursuant to N.C.G.S. § 57C-8-01 as derivative claims.  RSN Properties, Inc. v. Jones, No. COA04-100, 2005 WL 465551 (N.C. App. March 1, 2005); Crouse v. Mineo, ____ N.C. App. ___, 658 S.E.2d 33 (2008).